OSCN Found Document:STEED v. BAIN-HOLLOWAY

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STEED v. BAIN-HOLLOWAY
2015 OK CIV APP 68
Case Number: 113285
Decided: 07/31/2015
Mandate Issued: 08/27/2015
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2015 OK CIV APP 68, __ P.3d __

 

BREANNE STEED AND JERRI VAN ELLEN, Plaintiffs/Appellants,
v.
CHASE PATTERSON BAIN-HOLLOWAY, Defendant/Appellee,
and
Conner Alexander Acebo, Edson Vladmir Bellefleur, Darren Lee Bryant, Jarrod Henry Burke, James Edward Carlisle, Jennifer Denee Carlisle, Steven Rene Castellon, Wilbert Lee Coleman II, Curtis Osmyn Conley, Micah Darrell Conner, Brandon Edward Cox, Karl Joseph Crowley, Kyle Diffee, William Eugene Dunbar II, Brandee Alexandrea Foster, Wendell Foster Spencer, Charles Lorun Franklin IV, Brittany Lea Gilliam, Shane Allen Gray, Gary Lee Haddad, Andrew Harwell, Tony Newman Hilburn, Eric Paul Hopkins, Buckley Connor Horton, Randall Anthony Horton, Richard Joseph Irvine, Rebecca Clytee Keck, David John Kennedy, Dennis Laneil King Jr, Wonder Alexander Logan, Wendell Allan Mann, Zachary Ryan Mott, Preston Mark Nahmias, Tracy Lea O'Bryan, Jack Leroy O'Donnell, Matthew Richard Peel, Allison Leslie Perrin, Daisha Jean Ray, Jacob Ryan Roley, Eddy Duane Sellers, Andrew Jackson Smith, Natasha Speilman, Gary Phillip Stamper, Ryan Marcus Steeves, Matthew Stiger, Mistie Storm, Shelly L. Tillison, Angela K. Torres, Defendants.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE JEFFERSON D. SELLERS, TRIAL JUDGE

AFFIRMED

Robert Burton, Tulsa, Oklahoma, for Plaintiff/Appellant, Breanne Steed,
Kevin D. Adams, Tulsa, Oklahoma, for Plaintiff/Appellant, Jerri Van Ellen,
Joel Wohlgemuth, David R. Ross, Tulsa, Oklahoma, for Defendant/Appellee.

BRIAN JACK GOREE, PRESIDING JUDGE:

¶1 The issue in this appeal is whether the Drug Dealer Liability Act, 63 O.S. 2011 §2-421 et seq., is unconstitutional. The Act permits a plaintiff who is harmed by the use of an illegal drug to recover civil damages against a defendant who has participated in the illegal drug market. The Drug Dealer Liability Act is a new and non-traditional basis for civil liability because it allows damages without proof that the defendant caused the harm allegedly suffered. We hold that the statutory parameters purporting to connect plaintiffs who are harmed by an illegal drug, and defendants who participated in the illegal drug market, are so arbitrary that liability imposed by the Act would deprive a defendant of due process of law. Title 63 O.S. 2011 §2-424(B)(2) is unconstitutional.

I.

Background

¶2 Three minors commenced this action by their next friends, Breanne Steed and Jerri Van Ellen (Plaintiffs). Plaintiffs allege the children have suffered damages as a result of their mothers' use of marijuana in Tulsa, Oklahoma. They sued 51 defendants. The petition alleges that each defendant has been arrested and charged with an illegal drug offense in Tulsa County. One of the defendants is Chase Bain-Holloway.

¶3 Plaintiffs allege Bain-Holloway was arrested after the police recovered 232 grams of marijuana in a plastic bag and $1,560 cash in the center console of a car he was occupying. The petition also alleges Bain-Holloway's cell phone contained text messages suggesting he was arranging to sell marijuana by the pound. Bain-Holloway pled guilty to the charge of Unlawful Possession of a Controlled Drug with Intent to Distribute. He was not convicted, but received a five year deferred sentence. On these facts, Plaintiffs claim Bain-Holloway is liable to them under the Drug Dealer Liability Act for damages due to emotional distress, loss of economic and educational potential, and loss of consortium.

¶4 Bain-Holloway filed a motion to dismiss the petition with prejudice. He argued that it failed to state a claim for relief because the Drug Dealer Liability Act infringed his due process rights guaranteed by Article II, Section 7 of the Oklahoma Constitution and the Fourteenth Amendment to the United States Constitution. He argued that the Act impermissibly imposed liability on him without any showing of a causal relationship between his actions and the children's damages.

¶5 Plaintiffs objected, arguing the statute does not violate the constitution because its scheme of relaxed causation requirements is rationally related to the government's interest in providing the families of drug users the means to recover damages from participants in the illegal drug market. After a hearing, the trial court concluded the Act is unconstitutional and dismissed the petition with prejudice. Plaintiffs appealed.

II.

Standard of Review

¶6 The purpose of a motion to dismiss is to test the law that governs the claim in litigation, not the underlying facts. Darrow v. Integris Health, Inc., 2008 OK 1, ¶7, 176 P.3d 1204, 1208. Generally, a petition may be dismissed as a matter of law for two reasons: (1) lack of any cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Indiana National Bank v. State Department of Human Services, 1994 OK 98, ¶4, 880 P.2d 371, 375. A trial court's judgment dismissing a petition is reviewed de novo. Porter v. Oklahoma Farm Bureau Mutual Ins. Co., 2014 OK 50, ¶9, 330 P.3d 511, 514.

¶7 When the constitutionality of a statute is at issue, the court's function is limited to determining the validity or invalidity of the legislative provision. Fent v. Oklahoma Capitol Improvement Authority, 1999 OK 64, ¶4, 984 P.2d 200, 204. The court does not concern itself with a statute's propriety, desirability, wisdom, or practicality. Id. There is a strong presumption which favors the constitutionality of legislative acts, and a reviewing court will uphold the statute unless it is clearly, palpably and plainly inconsistent with fundamental law. Black v. Ball Janitorial Service, Inc., 1986 OK 75, ¶5, 730 P.2d 510, 512.

 

III.

The Drug Dealer Liability Act

¶8 The Oklahoma Legislature adopted the Act in 1994.[1] Laws 1994, c. 179, §§1-15, (eff. Sept. 1, 1994). The Act provides that a person who knowingly participates in the illegal drug market in this state can be liable for civil damages. §2-423(A).[2] A plaintiff may recover economic, noneconomic, and exemplary damages, as well as attorney fees and costs. §2-424(C).

¶9 The persons who may bring such an action include a child of the individual drug user, a parent of the individual drug user, or the legal guardian, spouse, or sibling of the individual drug user. §2-424(A)(1). An employer of an individual drug user may sue, §2-424(A)(3), and so may a provider of funding for treatment of an individual drug user. §2-424(A)(4). An individual who was exposed to an illegal drug in utero may also file suit. §2-424(A)(2). Persons who bring an action under the Act must show they incurred damages "caused by use of an illegal drug by an individual." §2-424(A).[3]

¶10 Section 2-424(B)(2) permits a plaintiff to seek damages from persons who knowingly participated in the illegal drug market, provided that three proximity conditions are met. First, the "illegal drug market target community of the defendant" must be the same as the individual drug user's place of drug activity. §2-424(B)(2)(a). Second, the defendant's drug market participation must be connected with the same type of illegal drug used by the individual user. §2-424(B)(2)(b). Third, the defendant must have participated in the illegal drug market "at any time during the illegal drug use of the individual user." §2-424(B)(2)(c). Thus, a plaintiff may seek damages from any drug dealer when the place, drug-type, and time of use matches that of the individual drug user.

¶11 The individual user's place of drug activity must be within the illegal drug market target community of the defendant. The Act defines the target community based on the amount of the illegal drug possessed or distributed.[4] The size of the target community increases as the amount of illegal drug possessed or distributed increases.[5] The smallest target community is the county, and the largest target community is the state. §2-427.

¶12 While the Act allows a defendant to join other market participants to assert a right of contribution, §2-430, it does not limit any single defendant's liability to that defendant's market share contribution. A plaintiff may recover 100% of his or her damages against any single illegal drug market participant in the same target community.

IV.

Analysis

¶13 Plaintiffs are not required to offer proof that Bain-Holloway supplied the drugs used by their mother. Section 2-424(B)(2) eliminates the traditional element of causation and replaces it with a requirement that a plaintiff show that a defendant marketed the same drug, within the same time period, and within the same geographic target community as that used by the individual user. Under the Act, Plaintiffs need only show they were harmed by their mother's use of marijuana, and that Bain-Holloway participated in the marijuana market in Tulsa County during the same period of time.

¶14 Bain-Holloway argues the statute eliminates the essential element of causation. Plaintiffs contend the Act authorizes liability based upon a rational relationship between an illegal drug participant and the individual user of an illegal drug.

¶15 The due process clauses of the United States and Oklahoma Constitutions provide that citizens cannot be deprived of their rights to life, liberty or property without first receiving notice and a meaningful opportunity to appear and be heard. Daffin v. State ex rel. Oklahoma Department of Mines, 2011 OK 22, ¶16, 251 P.3d 741, 746. Substantive due process is "the judicial determination of the compatibility of the substance of a law or governmental action with the Constitution. The Court is concerned with the constitutionality of the underlying rule rather than with the fairness of the process [procedural due process] by which the government applies the rule to an individual." Gladstone v. Bartlesville Independent School District No. 30, 2003 OK 30, ¶20, 66 P.3d 442, 451, quoting Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law 14.6 at 356 (2nd Ed.1992).

¶16 The right to due process protects citizens from arbitrary and unreasonable action by the state, and statutes that work an arbitrary forfeiture of property rights are unconstitutional as violations of due process. City of Edmond v. Wakefield, 1975 OK 96, ¶6, 537 P.2d 1211, 1213. An appellate court may examine the constitutional adequacy of proceedings conducted pursuant to a legislative enactment. In re Baby F. v. Oklahoma County District Court, 2015 OK 24, ¶14, 348 P.3d 1080. In determining whether the governmental action violates the substantive component of the due process clause, a balance must be struck between the right protected and the demands of society. In re Baby F., ¶16.

¶17 The question presented is whether the causation substitutes embodied in this new statutory tort adequately preserve the defenses of a potential defendant, or whether the Act effectively authorizes a taking without due process of law. The focus of the analysis is the degree to which the alleged conduct must be connected to the claimed harm.

¶18 Some courts have approved various forms of collective liability as alternative grounds for relief when an injured plaintiff is unable to identify tortfeasors. In Sindell v. Abbott Laboratories, 163 Cal. Rptr. 132, 607 P.2d 924 (1980), the California Supreme Court recognized the theory of market share liability. The plaintiff alleged injury in utero caused by the drug diethylstilbestrol. Plaintiff's mother had taken DES during pregnancy and the court acknowledged it would be impossible for her to identify which manufacturer had produced the drug she ingested. The court nevertheless permitted an action, provided that a substantial percentage of DES manufacturers were joined, and that the liability of any one defendant would be limited to the same proportion that their production of the drug bore to the entire market. Sindell, 607 P.2d 924, 937.

¶19 The Oklahoma Supreme Court rejected the theory of market share liability in Case v. Fibreboard Corp., 1987 OK 79, 743 P.2d 1062, 1067. In Case, the plaintiffs alleged they were injured by asbestos-containing products. However, they could not tie any of the named defendants to any specific product. One concern addressed by the Court was that balancing the contributions of each manufacturer to the asbestos market would be incalculably difficult. Case, ¶9. It noted that asbestos is present in more than three thousand products commonly found in the home and work environments. Case, ¶6. Unlike DES, which was produced from a single chemical formula and caused injury in the single context of ingestion by pregnant women, asbestos fibers vary widely in chemical composition and risk of danger. Id.

¶20 The Supreme Court declined to adopt market share liability in Case because there was not a sufficient link between the claimed harm and the alleged wrongful conduct. When a liability theory "eliminates proof of causation for public policy reasons, it must also be clearly founded in facts which support the link between the injury suffered and the risk to which the plaintiff was exposed." Case, ¶7. Defendants who are sued in tort have a right "to have a causative link proven between that defendant's specific tortious acts and the plaintiff's injuries." Case v. Fibreboard Corp., 1987 OK 79, ¶10, 743 P.2d 1062, 1067.[6]

¶21 Causation is a traditional element of tort liability. In any tort, there must be "some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered." State of Oklahoma ex rel. Oklahoma Department of Public Safety v. Gurich, 2010 OK 56, ¶14, 238 P.3d 1, 4. The Drug Dealer Liability Act creates liability for participation in the illegal drug market, regardless of whether the defendant's conduct is the cause of the injury. Market participation is actionable under §2-424(B)(2) when there is a correlation of time, place, and drug-type between the illegal drug market participant and the illegal drug user. If proof of these criteria reasonably connected individual drug dealers to the actual harm they caused, then §2-424(B)(2) would not deprive defendants of due process of law.

¶22 It is unreasonable, however, to assume that the actual tortfeasor will be joined as a defendant in any case brought pursuant to §2-424(B)(2). The Act enables a plaintiff to identify a class of defendants composed of persons who have "a criminal conviction pursuant to state drug laws or the Comprehensive Drug Abuse Prevention and Control Act of 1970." §2-431(B). Those convicted are "estopped from denying participation in the illegal drug market" and the conviction is prima facie evidence of participation in the illegal drug market. Id. In communities where a high proportion of drug dealers successfully evade law enforcement, the statute creates an unreasonable risk that those who become liable for damages are paying for wrongful conduct that was actually caused by another.[7]

¶23 In Case, the "causative link" between a plaintiff harmed by asbestos and defendants who produced products containing asbestos was not shown. The likelihood that the defendants actually caused the claimed injuries was remote considering the fact that asbestos is estimated to be present in thousands of products. The Drug Dealer Liability Act eliminates the necessity of a causation link between persons harmed by an illegal drug and participants in that illegal drug market. We conclude that defendants collectively sued under the Act, who are identifiable because they were charged or convicted of a drug offense, are not justifiable substitutes for non-identifiable persons who actually caused the harm.

V.

Conclusion

¶24 Section 2-424(B)(2) of the Drug Dealer Liability Act arbitrarily creates civil liability because it imposes such liability without regard to whether the collection of defendants sued includes the actual provider of the illegal drug that harmed the plaintiff. Any likelihood that the actual tortfeasor is named as a defendant is speculative rather than probable.

¶25 Title 63 O.S. 2011 §2-424(B)(2) is unconstitutional because it defines a liability-creating connection between an alleged harm and a wrongful conduct that is too tenuous to adequately protect a potential defendant's rights to substantive due process. Imposing liability on a person regardless of whether that person's conduct is the cause of the injury is arbitrary. The trial court's dismissal with prejudice of Plaintiffs' petition against Chase Patterson Bain-Holloway is AFFIRMED.

BUETTNER, J., concurs.

BELL, J., dissenting with opinion:

¶26 The majority loses sight of the underlying principle that, because of the nature of the illicit drug trade, defendants brought into court under the Drug Dealer Liability Act are in the best position to supply exculpatory evidence. Such a shift of the burden of persuasion would most definitely violate the Due Process Clause in a criminal proceeding, but in a civil case the situation is less clear. The Supreme Court of the United States has confirmed the notion that statutory presumptions in civil proceedings receive less scrutiny than statutory presumptions of criminal proceedings. Feicock v. Feicock, 485 U.S. 624 (1988).

¶27 The majority cites Case v. Fibreboard Corp., 1987 OK 79, 743 P.2d 1062, when analyzing market share liability. I agree with a statement from that case, where "the creation of a program of compensation for victims . . .as a matter of policy is a matter for the legislative body and not for the courts."

FOOTNOTES

[1] The Act was based on the Model Drug Dealer Liability Act propounded by the American Legislative Exchange Council. Although the Act has been in effect in Oklahoma for more than twenty years, we find no published cases concerning the Act. At least sixteen other states have adopted some form of the model act, yet no state has yet published an opinion addressing its constitutionality.

[2] "Participate in the illegal drug market" means to distribute, possess with an intent to distribute, commit an act intended to facilitate the marketing or distribution of, or agree to distribute, possess with an intent to distribute, or commit an act intended to facilitate the marketing and distribution of an illegal drug. 'Participate in the illegal drug market' does not include the purchase or receipt of an illegal drug for personal use only. §2-422(9).

[3] The Act permits a plaintiff to seek damages from a person who knowingly distributed, or knowingly participated in the chain of distribution of, an illegal drug that was actually used by the individual drug user. §2-424(B)(1). This statutory basis for liability is not at issue in this appeal. The minor plaintiffs do not allege their mother actually used an illegal drug distributed by Bain-Holloway. They claim Bain-Holloway is liable because he falls within a defined class pursuant to §2-424(B)(2).

[4] 63 O.S. 2011 §2-422 provides in part:

5. "Level one offense" means possession of one quarter (1/4) ounce or more, but less than four (4) ounces, or distribution of less than one (1) ounce of a specified illegal drug, or possession of one (1) pound or twenty-five plants or more, but less than four (4) pounds or fifty plants, or distribution of less than one (1) pound of marijuana;

6. "Level two offense" means possession of four (4) ounces or more, but less than eight (8) ounces, or distribution of one (1) ounce or more, but less than two (2) ounces, of a specified illegal drug, or possession of four (4) pounds or more or fifty plants or more, but less than eight (8) pounds or seventy-five plants, or distribution of more than one (1) pound but less than ten (10) pounds of marijuana;

7. "Level three offense" means possession of eight (8) ounces or more, but less than sixteen (16) ounces, or distribution of two (2) ounces or more, but less than four (4) ounces, of a specified illegal drug or possession of eight (8) pounds or more or seventy-five plants or more, but less than sixteen (16) pounds or one hundred plants, or distribution of more than five (5) pounds but less than ten (10) pounds of marijuana;

8. "Level four offense" means possession of sixteen (16) ounces or more or distribution of four (4) ounces or more of a specified illegal drug or possession of sixteen (16) pounds or more or one hundred plants or more or distribution of ten (10) pounds or more of marijuana;

[5] 63 O.S. 2011 §2-427 provides:

A person whose participation in the illegal drug market constitutes the following level offense shall be considered to have the following illegal drug market target community:

1. For a level one offense, the county in which the place of participation of the defendant is situated;

2. For a level two offense, the target community described in paragraph 1 of this section along with all counties with a border contiguous to that target community;

3. For a level three offense, the target community described in paragraph 2 of this section plus all counties with a border contiguous to that target community; and

4. For a level four offense, the state.

[6] The Supreme Court left open the potential for a legislatively crafted "program for compensation" for victims of asbestos-related injuries. Case, ¶10. Policy matters are "for the legislative body and not for the courts." Id. It is the legislature's prerogative to establish public policy by enacting laws that afford remedies not otherwise available under the common law. It is the function of the judiciary to ascertain whether an enactment is constitutionally flawed.

[7] Industry-wide liability, or "enterprise liability," theorizes that the standard followed by the industry forms the basis for the cause of action. Therefore, each industry member has contributed to the plaintiff's injury. Sindell, 607 P.2d at 935. Enterprise liability would, for example, obviate identifying the manufacturer of the injury-causing drug. Sindell, p.928. The Oklahoma Supreme Court rejected the theory of enterprise liability in Case.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1986 OK 75, 730 P.2d 510, 57 OBJ 3023, Black v. Ball Janitorial Service, Inc.
Discussed
 1987 OK 79, 743 P.2d 1062, 58 OBJ 2562, Case v. Fibreboard Corp.
Discussed at Length
 1994 OK 98, 880 P.2d 371, 65 OBJ 2520, Indiana Nat. Bank v. State Dept. of Human Services
Discussed
 2003 OK 30, 66 P.3d 442, GLADSTONE v. BARTLESVILLE INDEPENDENT SCHOOL DISTRICT NO. 30
Discussed
 2008 OK 1, 176 P.3d 1204, DARROW v. INTEGRIS HEALTH, INC.
Discussed
 2010 OK 56, 238 P.3d 1, STATE ex rel. OKLAHOMA DEPT. OF PUBLIC SAFETY v. GURICH
Discussed
 2011 OK 22, 251 P.3d 741, DAFFIN v. STATE ex rel. OKLAHOMA DEPT. OF MINES
Discussed
 1975 OK 96, 537 P.2d 1211, CITY OF EDMOND v. WAKEFIELD
Discussed
 2014 OK 50, 330 P.3d 511, PORTER v. OKLAHOMA FARM BUREAU MUTUAL INSUR. CO.
Discussed
 2015 OK 24, 348 P.3d 1080, BABY F. v. OKLAHOMA COUNTY DISTRICT COURT
Discussed
 1999 OK 64, 984 P.2d 200, 70 OBJ 2100, Fent v. Oklahoma Capitol Improvement Authority
Discussed
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-421, Short Title
Cited
 63 O.S. 2-422, Definitions
Cited
 63 O.S. 2-424, Persons Eligible to Bring Action for Damages Caused by Illegal Drug Use - Potential Defendants - Damages
Discussed
 63 O.S. 2-427, Levels of Offenses - Illegal Drug Market Target Community
Cited